**Albert SCHWARTZBERG and Sigmund Lefkowitz, Plaintiffs,**

**v.**

**Joseph CALIFANO et al., Defendants.**

**No. 78 Civ. 1039.**

United States District Court,
S. D. New York.

June 7, 1978.

On Motion to Reargue June 23, 1978.

James M. LaRossa, Schekter, Aber & Hecht, P. C., New York City, for plaintiffs; David A. Cutner, Marvin L. Tenzer, Scott B. Lunin, New York City, of counsel.

Robert B. Fiske, U. S. Atty. for the Southern District of New York, New York City, for Joseph Califano and Jacqueline G. Wilson; Patrick H. Barth, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. for the State of New York, New York City, for State defendant; Allan S. Moller, Mark C. Rutzick, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs Albert Schwartzberg and Sigmund Lefkowitz, owners and operators of two licensed health care facilities located in the Bronx, have brought this action to enjoin federal defendants Joseph Califano and Jacqueline G. Wilson, as well as state defendants Barbara Blum, and others[1] from terminating the facilities' participation in the Medicare and Medicaid programs pending an administrative hearing on the alleged deficiencies which warrant termination. The two facilities are known as Kings Harbor Care Center ("Kings Care"), a nursing home, and Kings Harbor Manor Facility ("Kings Manor"), a health related facility. This opinion will consider only issues relating to Kings Care.[2]

Since in or about April 1976, plaintiffs have entered into Provider Agreements with the United States Department of Health, Education and Welfare ("HEW") wherein Kings Care agreed to "maintain compliance with operating standards and to provide services in accordance with statutory provisions, rules and regulations in exchange for reimbursements for such services." Supplemental Complaint at ¶ 17. The most recent agreement expired on March 31, 1978 and, by letter dated March 1, 1978, HEW advised plaintiffs of its determination not to renew Kings Care's Medicare Provider Agreement for the period commencing April 1, 1978. The determination not to renew the Provider Agreement was apparently rendered following a survey of the facility, but without a prior hearing "at which plaintiffs would have an opportunity to be represented by counsel, present

---

1. Plaintiffs have also sued Robert P. Whalen, individually and as Commissioner of the Department of Health of the State of New York; Richard A. Berman, individually and as director of the Office of Health Systems Management of the Department of Health; William Liddle, individually and as Associate Director of the Facilities Surveillance Group of the Office of Health Systems Management; Earl M. Collier, Jr., individually and as Executive Director of the Office of Health Systems Management; Nasry Michelin, individually and as Acting Regional Coordinator for the New York City Area for the Long Term Care Unit of the Office of Health Systems Management; William Steibel, individually and as Deputy Commissioner of the Department of Social Services of New York State; Juanita Civillo, individually and as Nursing Consultant for the Office of Health Systems Management; Eugene Battenfield, individually and as Hospital Administration consultant for the Office of Health Systems Management.

2. Plaintiffs received notice on March 29, 1978 that King Manor's Medicaid Provider agreements would not be renewed for the period commencing April 1, 1978. Thereupon, plaintiffs sought and obtained a temporary restraining order, followed by a preliminary injunction against the state barring any action to decertify that facility pending an administrative hearing. Plaintiffs have now moved for summary judgment against the state; however, that motion is not fully submitted.

evidence and examine and cross-examine witnesses." *Id.* at 36. Termination in this manner, according to plaintiffs, violated their rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

Following the decision not to renew the Medicare Provider Agreement, the state defendants notified plaintiffs that Kings Care's Medicaid Provider Agreement would not be renewed. The state decision necessarily flowed from the federal decision since the conditions of participation for the Medicare and Medicaid skilled nursing home programs are the same. *See* 42 U.S.C. §§ 1395cc(c)(2), 1396i(b).[3] Plaintiffs contend that the failure to renew the Medicaid agreements also violated their rights under the due process clause as well as the N.Y. Public Health Law § 2806(2).[4]

On April 19, 1978 plaintiffs' motion for a preliminary injunction restraining the Federal and state defendants from terminating Kings Care's participation in the Medicare and Medicaid programs pending an administrative hearing was granted. Defendants now move to dismiss the complaint of Kings Care for lack of jurisdiction or in the alternative for summary judgment. Plaintiffs oppose the motion and have also cross moved for summary judgment.

Defendants urge as the ground for their motion that federal question jurisdiction under 28 U.S.C. § 1331 is precluded by 42 U.S.C. § 405(h), since the final decision of the secretary of HEW is reviewable as provided in 42 U.S.C. § 405(g). Defendants rely primarily on *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), a case in which the Supreme Court held that § 405(h) deprives a court of federal question jurisdiction in an action which seeks to recover social security benefits. *Id.* at 756–57, 95 S.Ct. 2457.

*Salfi* involved a widow's application for social security benefits for herself and her child, following the death of her husband of six months. Plaintiffs, on behalf of themselves and others similarly situated, appealed the denial of their application on the grounds that the statute which excluded from its coverage surviving widows and stepchildren "who had their respective relationship with the deceased wage earner for less than nine months prior to to his death" was unconstitutional. *Weinberger v. Salfi,* supra at 754, 95 S.Ct. at 2461. Plaintiffs sought declaratory and injunctive relief as well as the benefits allegedly due them.

In noting the absence of § 1331 jurisdiction, the Supreme Court examined carefully the third sentence of § 405(h) which provides:

"No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [§ 1331 *et seq.*] of Title 28 to recover on any claim arising under [Title II of the Social Security Act.]"

42 U.S.C. § 405(h). The Court determined that this sentence quite plainly barred any federal question jurisdiction under § 1331 where a party is seeking social security benefits, notwithstanding the constitutional challenge to the statute. The Court observed:

"It would, of course, be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not also arise under the Social Security Act. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions."

*Weinberger v. Salfi, supra,* at 760–61, 95 S.Ct. at 2464.

---

3. See also 45 CFR 249.33(a)(10) October 1, 1976 which provides that facilities not approved for eligibility by HEW shall not be recognized for purposes of payment under Title XIX of the Social Security Act.

4. Since all parties agree that the state's decision to decertify Kings Care was not independently made, but was mandated by HEW's determination, my findings with regard to HEW shall apply equally to the state.

■ At first blush the application of *Salfi* to the case at bar seems appealing; however, a closer examination and comparison of the two cases reveal their distinguishable characteristics. In *Salfi* the named plaintiffs had filed an application with the Secretary for benefits and, upon its denial, filed their complaint. Thus while § 1331 did not serve as a basis for jurisdiction, this prior resort to administrative remedies gave the federal courts jurisdiction under 42 U.S.C. § 405(g) which provides for judicial review following "any final decision of the Secretary." In the instant case, plaintiffs' challenge is to the manner in which benefits were denied; that is, without a prior hearing. Were *Salfi* to control, plaintiffs would have no remedy since they would be required to await the final decision of the Secretary after a hearing which would follow the termination of benefits to Kings Care. Thus, by the time it came to be considered, their claim that the procedure followed by the Secretary is unconstitutional would be moot. I do not read *Salfi* to require such a result, and, in any event, I do not believe that this case falls within a literal reading of the *Salfi* holding since plaintiffs are not seeking judicial review of a decision after a hearing to deny benefits, but rather are "seeking only to assure that procedures comporting with due process be followed by the Secretary in resolving the dispute over Kings [Care's] continued participation in the Medicare/Medicaid Programs." Plaintiff's Memorandum in Opposition to Defendants' Motion at 6. Accordingly, I find there is jurisdiction to entertain this complaint. *See generally South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 913–14 (2d Cir. 1976); *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283 (8th Cir. 1976), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1977); *But see Dr. John T. MacDonald Foundation v. Califano,* 571 F.2d 328 (5th Cir. 1978).

Defendants also argue, alternatively, that if this Court has jurisdiction to entertain the complaint, they are entitled to summary judgment since "a hearing more than sufficient to satisfy the requirements of due process . . ." has been provided by virtue of the reconsideration process afforded plaintiffs. Defendant's Memorandum of Law at 17. In support of their position, defendants point to the 69 page report detailing deficiencies in the nursing home, plaintiffs' opportunity to reply to the report, a reinspection by two allegedly disinterested inspectors and plaintiffs' appearance before the decision maker to argue their position. According to defendants, the review had herein fully complied with the requirements of due process established in *Case v. Weinberger,* 523 F.2d 602 (2d Cir. 1975) a decision which both plaintiffs and defendants rely on, but to which each give a different interpretation. In *Case* the Second Circuit was called upon to decide whether or not a full evidentiary hearing was necessary prior to a nursing home's decertification as a skilled nursing facility under the Medicaid program. The nursing home in question, Case Nursing Home, was found after a survey, to have Life Safety Code Violations which the Secretary of HEW determined not to waive. Before this determination became final, Mrs. Case, the owner of the home, was afforded a review of the recommendation to decertify the home as a skilled nursing facility. The "review" was informal in that no full evidentiary hearing was afforded; however, Mrs. Case did have counsel present to advocate her position.

In considering whether a post termination hearing could comport with due process, the Second Circuit noted that "where certain emergency situations which threaten the public safety exist and where the individual interest is of less importance, 'an official body can take summary action pending a later hearing.'" *Id* at 606 *quoting Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In *Case,* however, the court went on to observe that it had no need to "decide . . . whether the conditions existing at the Case establishment were so hazardous as to justify summary action by the Secretary . . . pending any hearing on the validity of his judgment, since the Secretary did grant

Mrs. Case the informal 'review' session prior to his taking action." *Case v. Weinberger, supra,* at 607 (footnote omitted.) The Court then went on to measure the review session, "in light of the government's interest, against Mrs. Case's interest in continued participation in the Medicaid program." *Id.* It concluded that the business setback she might suffer did not "compare favorably with the government's interest in the safety of her patients" and that the government's interest justified termination after a "less than full evidential hearing." *Id.* at 607–8.

■ Similarly in the action at bar, plaintiffs have met with representatives of HEW on at least two occasions and have submitted replies to the report prepared by HEW investigators. Kings Care was reinspected following plaintiffs' assurances that deficiencies would be corrected and argued their position before the decision maker. It is apparent that this preliminary pretermination review complies with the procedure approved in *Case v. Weinberger.* Moreover, when the interest of Kings Care in continued participation in the Medicare and Medicaid programs is weighed against the government's interest in patient safety, the government's interest must prevail. Defendants' report (admissible in evidence pursuant to Rule 803(8)(B) of the Federal Rules of Evidence) documents conditions which in the Secretary's view jeopardize the health and safety of Kings Care patients. *See* 42 U.S.C. § 1395cc(a)(1) which provides that provider agreements may not extend beyond twelve months except that an additional two months may be authorized by the secretary *only where there is no danger to the health and safety of patients.* Plaintiffs have been given an opportunity to correct the deficiencies found by HEW over the past six months but have apparently not done so to the satisfaction of the government. Since I have been called upon only to assess the adequacy of the procedures thus far afforded plaintiffs, I have no reason to pass upon the merits of HEW's determination at this time.

Plaintiffs are, of course, entitled to a full evidentiary hearing before an administrative law judge at some future time. *Case v. Weinberger, supra* at 609–11. To avoid undue hardships to them, I direct that such a hearing should be held as soon as possible, but in any event, not more than 90 days following plaintiffs' request for it.

Based upon the foregoing, defendants' motion to dismiss is denied. Their motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied.

Settle judgment on seven days' notice.

## ON MOTION TO REARGUE

Plaintiffs Albert Schwartzberg and Sigmund Lefkowitz, owners and operators of Kings Harbor Care Center ("Kings Care") have moved pursuant to Rule 9(m) of the General Rules for the Southern District of New York and Fed.R.Civ.P. 59(e) to reargue the motions disposed of by my memorandum decision of June 7, 1978. The principal ground for plaintiffs' motion is their assertion that I misapplied the balancing test set forth in *Case v. Weinberger,* 523 F.2d 602 (2d Cir. 1975). Specifically they urge that I failed to consider the interest of plaintiffs' patients, gave inadequate weight to plaintiffs' interest in having a due process hearing at a meaningful time and gave undue consideration to the determination of the Secretary of the United States Department of Health, Education and Welfare (HEW) that the alleged deficiencies at Kings Care pose a threat to the health and safety of plaintiffs' patients.

At the outset I note that plaintiffs are simply wrong in their assertion that I failed to consider the patients' interest when I granted defendants' motion for summary judgment. These aged and infirm patients, who are entitled to a high level of care and treatment, were, in fact, paramount in my considerations when I determined that HEW's interest in their health and safety outweighed the plaintiffs' interest in continuing to receive moneys from the Medicare and Medicaid programs.

Apparently it is the Secretary's determination that patients in Kings Care are not receiving the care to which they are entitled. This decision was reviewed and reconfirmed following a reinspection by two allegedly impartial investigators. As I indicated in my earlier opinion, plaintiffs have been aware for quite some time of the charged deficiencies and have been given ample opportunity to correct them. Additionally, since the review afforded plaintiffs in the instant case was very similar to that sanctioned in *Case*, I believe I am bound by the Second Circuit's ruling therein.

Plaintiffs have suggested that *Case* is distinguishable from the situation at bar in that the serious nature of the alleged deficiencies was uncontested by Mrs. Case. A careful reading of the facts of *Case* reveals, however, that while all parties agreed that some uncorrectible Life Safety Code violations existed, Mrs. Case continuously urged that these deficiencies "were not serious enough to endanger the health and safety of the patients." *Id.* at 609. Yet, notwithstanding this dispute, the Court found the informal review session sufficient to comply with due process. Balancing the interests of the parties, the Court determined that the government's interest in patient safety outweighed the anticipated damage to Mrs. Case. Similarly, in the case at bar, I find that the same interest in patient safety · overrides the possibility that plaintiffs' nursing home will cease operations.

Plaintiffs also argue that unnecessary transfer of patients from Kings Care might result in "transfer trauma" or even the death of many patients. This speculation must be considered in light of the deficiency of care which HEW has found at Kings Care. Since HEW is aware of the phenomenon of "transfer trauma",[1] it undoubtedly believes that the danger to health and safety imposed upon patients remaining at Kings Care outweighs the possible trauma attendant upon leaving it.

Neither *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir. 1976) nor *Klein v. Mathews*, 430 F.Supp. 1005 (D.N.J.1977) compels a result different than that reached in my earlier opinion. In *Hathaway*, the state joined the nursing home owner in opposing HEW's determination, while no such dispute between the state and federal government is presented in the case at bar. More significantly, plaintiffs herein have at all relevant times been aware of HEW's charges and were accorded informal reconsideration. In *Hathaway*, by contrast, no such relief was available to the nursing home's owner.

*Klein v. Mathews* is also distinguishable since that was an action brought by patients protesting their own transfer. In the instant case, although the patients did have a representative who spoke on their behalf on one occasion,[2] he took no position on the seriousness or veracity of HEW's charges. Moreover, the patients have not attempted to join in this action, nor have they filed amicus briefs or supporting affidavits.

Accordingly, upon reconsideration, I adhere to my earlier decision.

It is SO ORDERED.

---

1. Plaintiffs rely on HEW's own memorandum articulating the problem. *See* Plaintiffs' Memorandum in Support of Reargument at 7.

2. See Transcript of proceedings, March 28, 1978.