**SHEEPSHEAD NURSING HOME, Viola Ellner, and Ann Salerno, individually, as President and Vice-President of the Residents Council of Sheepshead Nursing Home and as representatives of all the patients at Sheepshead Nursing Home, Plaintiffs,**

v.

**Margaret M. HECKLER, as Secretary of the United States Department of Health and Human Services; Cesar Perales, as Commissioner of the Department of Social Services of the State of New York; David Axelrod, M.D., as Commissioner of the Department of Health of the State of New York; and George Vernez, as Acting Commissioner/Administrator of the New York City Human Resources Administration, Defendants.**

**No. 84 Civ. 6649 (SWK).**

United States District Court, S.D. New York.

Oct. 17, 1984.

Marvin Neiman, Meissner, Tisch & Kleinberg, New York City, for plaintiffs; Moshe Z. Mirsky and George S. Meissner, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Michael D. Patrick, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant NYSAG; Evelyn Tenenbaum, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, Law Dept., New York City, for defendant; Paul Marks, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is an action for a preliminary injunction. The action was originally brought by three plaintiffs: Sheepshead Nursing Home, Viola Ellner, and Ann Salerno. The latter two plaintiffs are currently patients in Sheepshead Nursing Home (hereinafter referred to as "Sheepshead"). The plaintiffs seek to enjoin the four named defendants from terminating Sheepshead's provider agreement and from terminating, as of October 17, 1984, medicare and medicaid payments to Sheepshead for the care and treatment of patients eligible for participation in these two programs.

*Procedural History*

The plaintiffs originally sought a temporary restraining order (hereinafter referred to as "TRO") in Part I from Judge Stewart on September 17, 1984. Judge Stewart denied the application for a TRO and sched-

uled a hearing for the preliminary injunction for October 2. At the request of all of the parties the hearing was postponed twice, and commenced on October 4. The hearing continued on October 9 and 10.

Counsel for plaintiffs informed the Court for the first time late in the afternoon of October 9 that they would be unable to proceed with the hearing on October 11 and 12 because of the religious holiday of Succoth. Counsel further informed the Court by letter late in the afternoon of October 15 that plaintiffs would conclude the presentation of their case with the submission of one affidavit. At this time plaintiffs also reinstated their application for a TRO, which is hereby denied.

On October 15 two of the plaintiffs, Viola Ellner and Ann Salerno, submitted notices of dismissal as to the actions brought by them. As there are currently summary judgment motions pending before the Court any dismissal must be based on the consent of all parties or Fed.R.Civ.P. 41(a)(2). I have decided to order the dismissal of the actions brought by Salerno and Ellner. Pursuant to Fed.R.Civ.P. 41(a)(2) these actions are hereby dismissed without prejudice. That leaves Sheepshead as the sole plaintiff in this action.

*Sheepshead Nursing Home*

Sheepshead is a 200-bed skilled nursing facility. Based upon three days of hearings and the voluminous affidavits submitted by the parties, it is undisputed that Sheepshead has a long history of providing inadequate and unacceptable care and treatment to its resident-patients.

As far back as March 23, 1983 Sheepshead was surveyed by the New York State Department of Health (hereinafter referred to as "DOH"). At this time Sheepshead was found to have excessive deficiencies in the level of care it was providing to its patients. Sheepshead was clearly advised of this on April 27, 1983, and to this day, has not contested the accuracy of the findings of the DOH survey team. Sheepshead was resurveyed on June 13, 1983. Of the twelve conditions (out of a total of eighteen conditions which must be met under federal law) previously found to be out of compliance, five remained out of compliance as of June 13, 1983. In view of this, Sheepshead was advised on June 15 and 30, 1983 that a ban on medicare admissions was being imposed on this facility. This had the effect of barring Sheepshead from accepting any new patients whose medical bills were paid for by Medicare or Medicaid.

On June 28, 1983, Sheepshead was provided with a meeting, which involved its representatives and representatives from the United States Department of Health and Human Services (hereinafter referred to as "HHS"), the Health Care Financing Administration (hereinafter referred to as "HCFA"), and New York State officials. Sheepshead's inability to comply with required conditions and to provide adequate care were discussed at this meeting.

In view of its poor record, Sheepshead was advised as early as June 30, 1983 that, not only would the ban on medicare admissions take effect, but also the termination of its provider agreement would be considered by the Secretary of Health and Human Services (hereinafter referred to as "the Secretary") if Sheepshead's level of compliance with federal requirements did not improve.

The ban on admissions lasted until December 29, 1983, and was lifted as of that day. Between July 15 and December 15, 1983 Sheepshead was resurveyed twice. On March 30, 1984 Sheepshead was issued a provider agreement by the Secretary. The duration of this agreement, however, was only for six months and covered the period from January 1 until June 30, 1984. Normally provider agreements issued by the Secretary are for a period of one year. Because of Sheepshead's dismal record, it was issued this agreement for a shorter period of time, and was also clearly advised that it would be carefully monitored during the period of the agreement.

Sheepshead was resurveyed yet another time on March 15 and 16, 1984. Once again Sheepshead was found to be providing deficient care. Sheepshead did not con-

test the validity of these findings, and merely submitted a Plan of Correction, as it had done on several prior occasions.

On June 25, 26 and 27, 1984 a team of HCFA surveyors conducted another survey of Sheepshead. In addition, at the end of this survey, the representatives of Sheepshead were provided with an exit conference. At this conference the surveyors once again clearly outlined several areas of deficient care and treatment which Sheepshead was providing to its patients.

The Secretary, by a letter dated August 15, 1984, formally notified Sheepshead that its Medicare provider agreement was being terminated. The termination of the agreement was to take effect on September 17, and Medicare and Medicaid payments to the facility would end as of October 17, 1984. The Secretary took this action because, as a result of the June survey, Sheepshead was once again found to be out of compliance with twelve of eighteen conditions required by federal law. Facilities must meet these conditions to be eligible for Medicare reimbursement. In addition to the Secretary's letter of August 15, Sheepshead also received a twenty-five page list of specific and detailed deficiencies in the care and treatment it provided to its patients.

Sheepshead made no response until September 12. On this date, for the first time in eighteen months (since the March 23, 1983 survey), Sheepshead requested a hearing to contest the findings of the surveyors as to the existence of numerous deficiencies in the care Sheepshead was providing.

It is against this factual background that Sheepshead claims to have been denied its rights to procedural due process guaranteed by the Fifth and Fourteenth Amendments. The essence of its claim is that it is entitled to a full evidentiary hearing before the provider agreement can be terminated.

*Jurisdiction*

Initially, the Court must confront the issue of whether it has subject-matter jurisdiction over this action. Plaintiff has alleged several alternative bases of jurisdiction. Sheepshead is mistaken, however, in attempting to rely on 28 U.S.C. § 1331 as a basis of jurisdiction over the federal defendant (the Secretary of HHS).

Title 42 of the Social Security Act establishes Health Insurance for the Aged and Disabled (hereinafter referred to as "the Medicare program"), 42 U.S.C. § 1395 *et seq.* The Medicare program, through 42 U.S.C. § 1395ii, incorporates by reference 42 U.S.C. § 405(h). 42 U.S.C. § 405(h) has been interpreted to preclude 28 U.S.C. § 1331 from serving as a basis of subject-matter jurisdiction to review decisions of the Secretary of HHS. *Weinberger v. Salfi,* 422 U.S. 749, 757–760, 95 S.Ct. 2457, 2462–64, 45 L.Ed.2d 522 (1975). *See also Mathews v. Eldridge,* 424 U.S. 319, 326–327, 96 S.Ct. 893, 898–99, 47 L.Ed.2d 18 (1976); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 912 (2d Cir.1976).

■ The Medicare program, in 42 U.S.C. § 1395ff(c), provides for judicial review of the Secretary's decisions pursuant to 42 U.S.C. § 405(g). This latter section requires exhaustion of administrative remedies and the rendering of a "final decision" by the Secretary as prerequisites to judicial review. *Mathews v. Eldridge,* 424 U.S. 319, 328–329, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976). However, in *Mathews* the Supreme Court concluded that where a plaintiff challenges a decision of the Secretary based on constitutional claims which are collateral to the substantive claim, the requirement of administrative exhaustion can be dispensed with. *Id.* at 329–332, 96 S.Ct. at 900–901. Only a final decision of the Secretary is necessary in these circumstances for a court to exercise subject-matter jurisdiction over plaintiff's claims pursuant to 42 U.S.C. § 405(g). *Id.*

As to the jurisdictional issue I conclude that the Court may exercise subject-matter jurisdiction over plaintiff's claims against the Secretary of HHS pursuant to 42 U.S.C. § 405(g). *Mathews,* 424 U.S. 319, 329–332, 96 S.Ct. 893, 900–01, 47 L.Ed.2d 18. I reach this conclusion because the claims plaintiff raises as to the federal

defendant are procedural due process claims which are entirely collateral to the issue of whether Sheepshead is in compliance with federal requirements as to the level of care it provides.

The remaining defendants are Perales, Axelrod and Vernez, officials of New York State and New York City respectively. I find that I have jurisdiction over plaintiff's claims as to these defendants pursuant to 28 U.S.C. § 1331 and principles of pendent jurisdiction. 42 U.S.C. § 405(h) precludes jurisdiction under 28 U.S.C. § 1331 only as to the Secretary of HHS, and does not apply to decisions of state and local officials.

*Plaintiff's Claims Against the State and City Officials*

■ Several of the plaintiff's claims against the two state officials and the sole claim as to the city official are based on New York State law. These defendants, in their motions to dismiss correctly note that the Supreme Court's recent decision in *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), bars federal courts from issuing injunctive relief against state officials based on state law. *Id.* at 911, 917. It is clear that the relief sought against the state and city defendants here would operate against the State of New York itself. This includes the relief sought against defendant Vernez. *Id.* at 920–921, 920 n. 34. Thus, the motion to dismiss these claims as to Perales, Axelrod and Vernez is granted as to all claims against them based upon state law. The application for a preliminary injunction as to these claims is accordingly denied, and these claims are hereby dismissed. As this is the sole claim against Vernez, he is hereby dismissed from this action.

*Plaintiff's Federal Claims*

■ Only Sheepshead's federal law claims against defendants Heckler, Perales and Axelrod remain for the Court to consider. Sheepshead asserts that it is entitled to a full evidentiary hearing and a resurvey before its provider agreement for the Medicare program and its eligibility to receive medicaid payments are terminated. The bases of Sheepshead's position are the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1395cc(f), 1396i(c), and 1396a(i). Sheepshead seeks a preliminary injunction to enjoin the remaining three defendants from terminating medicare and medicaid payments until such time as a hearing and a resurvey are conducted.

The remaining defendants (Heckler, Perales and Axelrod) have moved to dismiss all of Sheepshead's claims. As the Court has considered the voluminous affidavits submitted by the parties it treats these motions as summary judgment motions pursuant to Fed.R.Civ.P. 12(b).

In order to obtain a preliminary injunction in this Circuit a plaintiff must meet the following standard

> Preliminary injunctive relief in this Circuit calls for a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755, 758 (2d Cir.1979.)

Based upon three days of testimony at the hearing, and upon the voluminous affidavits submitted by the parties, the Court concludes that Sheepshead has failed to meet the foregoing standard. Its application for a preliminary injunction is, therefore, denied for the following reasons.

> Sheepshead contends that it will suffer irreparable harm if the injunction is not granted. This is so because it will be forced to go out of business if payments are terminated, according to Sheepshead. Sheepshead also asserts that it has a protectible property interest in receiving medicare and medicaid payments. It asserts that only a pre-termination hearing can adequately protect this property interest.

While Sheepshead has a somewhat meritorious claim as to irreparable harm (as it may very well be forced out of business if payments are terminated), this is only one part of the burden which it must meet. Sheepshead must *also* show *either* likelihood of success on the merits *or* a fair ground for litigation and a balance of hardships tipping decidedly in its favor. Sheepshead has failed utterly to meet either one of these alternatives.

With respect to the procedural due process claims and their relation to the balance of hardships the Second Circuit has directly addressed the situation presented by the instant case. In *Case v. Weinberger*, 523 F.2d 602 (2d Cir.1975), the Court stated:

> The procedural requirements of due process must reflect a balance between the government's interest and the nature of the individual interest being affected by governmental action.

*Id.* at 606.

As the Second Circuit found in *Case* that the governmental interest in protecting the patients in the facility was significant, so I, on facts far more compelling in the instant case (given Sheepshead's long history of providing excessively deficient care), reach the same conclusion. *Id.* at 606. The record in the instant case contains an overwhelming abundance of undisputed evidence regarding the inadequate and unacceptable level of care provided by Sheepshead over the past eighteen months.

I also find that the procedural due process accorded to Sheepshead thus far is more than sufficient to satisfy the Constitutional requirements, given the factual background of this case. This is so even though "a mistaken decision might unnecessarily close" Sheepshead. *Id.* at 607.

The record clearly illustrates that Sheepshead over the past eighteen months has had ample opportunity to contest the defendants' findings of deficient care. Sheepshead was surveyed and resurveyed numerous times. Sheepshead has been provided with meetings and an exit conference. It could have contested any of the findings regarding the quality of care in the facility at any time during the last one and a half years. Yet, it has never availed itself of the opportunity to challenge the defendants' findings. I also note that unlike the situation present in *Case*, 523 F.2d 602, there is no question here that Sheepshead will receive a full post-termination evidentiary hearing. The defendants do not dispute this.

Consistent with *Case*, I find that the balance of hardships does not tip decidedly in favor of Sheepshead. Indeed, given the government's significant interest here, and the procedural due process which Sheepshead has received thus far, the balance of hardships tips decidedly in favor of the defendants. Sheepshead has therefore failed to satisfy this prong of the standard. *Case v. Weinberger*, 523 F.2d 602. *See also Jewish Memorial Hospital v. Heckler*, No. 83 Civ. 4969, slip op. (S.D.N.Y. August 8, 1983) (for a transcript of this opinion see exhibit D which is annexed to Heckler's Memorandum of Law in support of motion to dismiss); *Kings Terrace Nursing Home v. Schweicker [Schweiker]*, No. 82 Civ. 6470, slip op. (S.D.N.Y. October 25, 1982); *Schwartzberg v. Califano*, 453 F.Supp. 1042 (S.D.N.Y.1978).

Similarly, Sheepshead has also failed to show that it is likely to succeed on the merits of its claim that it is entitled to a pre-termination evidentiary hearing. *Case v. Weinberger* is directly contrary to Sheepshead's contention with respect to medicaid payments. Medicaid payments are governed by 42 U.S.C. § 1396 *et seq.* (hereinafter referred to as "the Medicaid program"). Sheepshead asserts that an amendment to 42 U.S.C. §§ 1395cc(f) and 1396a(i), which occurred subsequent to the decision in *Case v. Weinberger*, enhances the likelihood of success on the merits.

Sheepshead attempts to rely on 42 U.S.C. §§ 1395cc(f) and 1396a(i) as a basis for its claim that it is entitled to a pre-termination hearing. However, Sheepshead cites no case which suggests that these sections require a pre-termination hearing. Moreover, at least one court has expressed serious doubt as to whether these sections

create a right to a pre-termination hearing. *American Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1083–1087 (7th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 432 (1983). The Seventh Circuit has stated that these two sections do not create a clear right to a pre-termination hearing. *Id. See also Kings Terrace Nursing Home v. Schweicker [Schweiker]*, No. 82 Civ. 6470, slip op.; *Schwartzberg v. Califano*, 453 F.Supp. 1042.

Similarly, Sheepshead has failed to show that it is likely to succeed on a claim that the Medicare program, 42 U.S.C. § 1395 *et seq.*, grants a right to a pre-termination hearing. The Medicare program, through 42 U.S.C. § 1395ff(c), incorporates 42 U.S.C. § 405(g). While 42 U.S.C. § 405(g) does provide for a hearing after a "final decision" by the Secretary, it does not require a pre-termination hearing.

As stated earlier, the Court concludes that Sheepshead has received adequate procedural due process thus far. Sheepshead has failed to show that it is likely to succeed on the merits of its claims that 42 U.S.C. § 1395 *et seq.*, 42 U.S.C. § 1396 *et seq.*, and the Fifth and Fourteenth Amendments to the United States Constitution require that it receive a pre-termination hearing. This being the case, Sheepshead has failed to meet the necessary standard to obtain a preliminary junction.

CONCLUSION

Sheepshead's application for a preliminary injunction is hereby DENIED. Sheepshead's application for a TRO is also DENIED. Defendant Vernez's motion to dismiss all of the claims against him is hereby GRANTED. The motion to dismiss, made by defendants Perales and Axelrod, all of Sheepshead's claims against them which are based upon state law is hereby GRANTED.

The action as to plaintiffs Viola Ellner and Ann Salerno is hereby dismissed as to all defendants. This is done at the request of Ellner and Salerno. Finally, the summary judgment motions as to Sheepshead's federal claims, made by Heckler, Perales and Axelrod are not decided by this opinion. Decision on these motions is reserved by the Court at this time. These motions will be disposed of prior to a hearing for a permanent injunction.

SO ORDERED.